IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| KEITH PARDEL, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 04-1266-MLB |
| | ) | |
| THE CITY OF ATWOOD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Before the court are the following:

1. Defendants' motion for summary judgment (Docs. 23 and 24);
2. Plaintiff's response (Doc. 28); and
3. Defendants' reply (Doc. 30).

Background

Plaintiff is the former chief of police of Atwood, Kansas. At the time of events giving rise to this case, the individual defendants were members of the Atwood city council. Plaintiff invokes this court's jurisdiction under 42 U.S.C. § 1983, claiming that he was terminated in violation of his First and Fourteenth Amendment rights. Plaintiff also makes a number of state law claims.

Summary Judgment Standards

The parties are familiar with the standards pertaining to summary judgment, which will be cited only if necessary.

Undisputed Material Facts and Applicable Statutes

1. Plaintiff was appointed chief of police for the city of

Atwood on May 15, 1998. He held this position based upon an annual appointment by the mayor and served at the pleasure of the mayor. K.S.A. 15-204.

    2. K.S.A. 74-5617 provides, in pertinent part:

> (a) Every candidate for permanent appointment to a position as a police officer or law enforcement officer shall meet the minimum training criteria specified in K.S.A. 74-5605 and amendments thereto and shall have attained 21 years of age.
>
>                                 * * *
>
> (c) Law enforcement agencies in Kansas shall be responsible for their agency's observance of the hiring requirements of this section.
>
> (d) No law enforcement agency head or other appointing authority shall knowingly permit the hiring of any person in violation of the requirements of this act . . . . Any violation of the requirements of this act shall be deemed to constitute misconduct in office and shall subject the agency head or appointing authority to:
>
>> (1) Removal from office pursuant to K.S.A. 60-1205 and amendments thereto;

    3. K.S.A. 74-5605 provides, in pertinent part:

> (a) Every applicant for admission to a course for police officers or law enforcement officers conducted by the training center shall be an employee of a . . . city law enforcement agency . . . . Prior to admission to a course conducted at the training center or at a certified state or local law enforcement agency, the applicant shall furnish to the director a statement from the applicant's appointing authority or agency head certifying the applicant's fulfillment of the following requirements. The applicant:
>
>                                 * * *
>
>> (2) has been fingerprinted and a search of local, state and national fingerprint files has been made to determine whether the applicant has a criminal record;
>>
>> (3) has not been convicted . . .for a crime which is a felony . . .;

-2-

    4.   In September 2001, Steve Browning was hired as a police officer for the city of Atwood.

    5.   In December 2001, plaintiff signed a document, under oath, which affirmed that Browning was in complete compliance with the standards set out in K.S.A. 74-5605. The form stated, in pertinent part, that Browning "has been fingerprinted and a search of local, state and national fingerprint files has been made to determine whether the applicant has a criminal record . . . ." However, plaintiff admitted at his deposition that when he signed the certification, he was aware that his office had not received the results of the fingerprint search:

> Q.   And just so we're clear, by the time you had signed this certification on exhibit 7 you did not have the results of the fingerprint search in your office, correct?
>
> A.   That will be correct, yes.

(Depo. at 78, 1.2-6). Plaintiff also testified that he told the council members that he believed that it was council member (and defendant) Cabrinha's responsibility to have the background check completed. There is no identifiable portion of his deposition testimony which explains plaintiff's reason for that belief. There is no evidence that, in fact, Cabrinha was responsible for Browning's security check which, if true, would be contrary to K.S.A. 74-5605 and 5617.

    6.   In a letter dated July 8, 2002, to defendant Betty Mickey, mayor of the city of Atwood, an official of the Kansas Highway Patrol reported that an investigation of Browning had revealed that Browning had submitted materially false information

-3-

at the time of his employment and that subsequent investigation revealed that Browning had a felony conviction. The letter stated, in pertinent part: "This felony conviction disqualifies Browning from being a law enforcement officer in the state of Kansas. A fingerprint check would have revealed this conviction and should have precluded Browning from employment with your city." The letter went on to state that plaintiff "is officially reprimanded for failing to conduct the required background investigation before Browning was hired as a police officer . . . . In any case and despite any type of political problems that might have existed, Chief Pardel's responsibility to the governing body and citizens of Atwood is to ensure that employees of his department are legally eligible to work in the criminal justice field. This is the type of performance expected from a professional criminal justice administrator." As a result, Atwood's police department's access to the Interstate Identification Index (III) was suspended because of Browning's unauthorized access to criminal history record information.

7. On July 18, 2002, plaintiff's employment was discussed by city council members. Plaintiff was present. At his deposition, plaintiff was asked whether he had done a III check on Browning. He responded that he performed the check but when asked whether he informed the city council on July 18 that he had done so, plaintiff answered several times that "I don't recall." (Depo at 26, 1. 11-25). Plaintiff also testified that he fingerprinted Browning and conducted a driver's license check around the time Browning was hired, but that on July 18, the city council members did not allow

-4-

him to produce a log showing that he had. Plaintiff identifies this alleged failure as the violation of his First Amendment rights (Depo. at 81, l.9-25). No log is attached to plaintiff's submission. There is no identifiable evidence that plaintiff told the city council members about the log at the July 18 meeting or at anytime thereafter prior to his termination.

8. The facts pertaining to plaintiff's allegations of a violation of his Fourteenth Amendment rights are as follows: the highway patrol letter was mailed by the patrol to ten individuals or agencies. In addition, it seems that someone posted the letter at a donut shop in the city of Atwood. At his deposition, plaintiff testified that "I don't know who posted that letter specifically."

9. Plaintiff's employment with the city of Atwood was terminated on August 16, 2002 by letter of even date. The letter stated, in pertinent part: "The basis for your termination was your failure to meet statutory requirements with regard to the screening of Steve Browning prior to his attending the academy and your certification to the academy that you had in fact done so on the pre-training evaluation form . . . ."

10. At some point, a Kansas television station did a news story regarding plaintiff's termination. The excerpts of plaintiff's deposition testimony regarding the story are not very informative. Defendant Peckham, Atwood city attorney, apparently was interviewed. Plaintiff asserted in his deposition that Peckham falsely told a reporter that "plaintiff had failed to perform certain acts which indeed had been performed." (Depo. at 141, l.5-

16). The falsity identified is Peckham's alleged statement that an "NCIC III check" and proper background investigation were not performed whereas plaintiff responds that, in fact, they were (Id. at 90, 1. 10-19). Plaintiff testified that he could not "specifically name" any false or misleading information published by defendant Creighton (depo. at 165-74), defendant Prideaux (id. at 175-78), defendant Trail (id. at 175-83), defendant Werner (id. at 183-86), defendant Stice (id. at 186-94), defendant Cabrinha (id. at 194-96) and defendant Mickey (id. at 196-98) other than Mickey's statement to him during the July 18 meeting that he, plaintiff, had never performed a criminal history check (id. at 91-92).

11. Plaintiff sought employment with the city of St. Francis, Kansas. When the city of St. Francis did not respond to his application, plaintiff felt that his resume went into a "black hole" due to the news reports. Plaintiff testified at his deposition:

Q. Are the communications that your wife had what leads you to believe that some statements made affected your ability to secure a job with the City of St. Francis?

A. Yes, sir.

Q. Tell me about those.

A. One of her clients, I can't recall her exact name, but what this person told my wife is the former chief of St. Francis said that "We'd never hire your husband, he has bad credentials."

Q. Okay. What business is your wife in or was she at the

-6-

```
        time?
A.      She's a nail technician in a beauty shop.
Q.      Okay.  And so a client of hers had heard from someone
        else –
A.      Had heard from the former chief of police, who's is not
        the chief now, but was then –
Q.      Okay.
A.      – in St. Francis.
Q.      Was there – what were the bad credentials supposedly?
A.      Didn't say.
Q.      Okay.  So you have not talked to the former chief
        yourself, correct?
A.      That's correct, sir.
Q.      You received no communication from the City of St.
        Francis indicating that the reason for not hiring you had
        to do with the KSN reporter's statements, correct?
A.      Yes, sir.
Q.      And it would also be correct that nothing Mayor Mickey
        said in the executive session of the July 18th, 2002
        meeting affected the chief's decision, you have no
        information about that; isn't that right?
A.      I don't have any information, sir.
Q.      And the fact of the matter is you don't know what the
        reference to bad credentials really means, correct?
A.      I was never given specifics, sir.  That could be correct.
Q.      You did no follow-up on the information your wife gave
        you as a result of the conversation with her client?
```

```
     A.   I didn't do any follow-up, sir.
```
(Depo. at 99-100).

12. Plaintiff ultimately was hired by Dodge City, which had knowledge of the problems he had experienced in Atwood (Depo. 161, l.3-10).

### First Amendment Claim

Plaintiff claims that his "free speech rights were infringed by the Council not providing Plaintiff with the opportunity to produce the Sheriff's log revealing the Interstate Identification Index (III) and driver's license check had in fact been performed on former Officer Browning. (Transcript of the Deposition of Keith Pardel . . . p. 81 l.20-24). Moreover, Plaintiff believes that additional discovery (specifically the deposition of Plaintiff's wife and Defendant Mickey) will reveal additional evidence that Plaintiff's free speech rights were infringed concerning protected political speech in which Plaintiff engaged." (Doc. 28 at 2 ¶ 4). Defendants respond that plaintiff was not terminated until August 16, 2002 and that between July 18 and August 16, plaintiff made no effort to provide the city council with any additional information, including the information which he claims the city council denied him the opportunity to present at the July 18 meeting. Defendants' response is not disputed by plaintiff.

Both plaintiff and defendants approach plaintiff's First Amendment claim on the basis of Connick v. Myers, 461 U.S. 138, 75 L.Ed.2d 708, 103 S. Ct. 1684 (1983). The plaintiff in Connick, a public employee, alleged that she was terminated in retaliation for her exercise of her right to speak out on a matter of public

-8-

concern. Plaintiff's claim does not fall with the Connick framework. Plaintiff's description of his claim under 42 U.S.C. § 1983 of denial of his First Amendment rights, supra, negates the existence of such a claim. It is not up to the court to do the parties' research or frame their claims and defenses, but rather to accept them as written. Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). This is especially true for a party represented by counsel. Even without considering issues such as qualified immunity and the fact that plaintiff served at the mayor's pleasure (which neither party addresses), it is clear that plaintiff is not contending that he made a statement of public interest or that he was terminated in retaliation therefore. The court cannot identify in the record any protected speech by plaintiff. Instead, the broadest possible interpretation of plaintiff's First Amendment claim is that defendants did not permit him to defend himself before terminating him. Even if plaintiff could prove this is so, it would not be proof of a violation of the First Amendment.

Accordingly, defendants' motion for summary judgment is granted as to plaintiff's § 1983 claim that he was terminated in violation of the First Amendment.

### Fourteenth Amendment

Plaintiff claims that defendants violated his rights under the Fourteenth Amendment by depriving him of liberty interests without due process. Plaintiff alleges two related liberty interests: (1) the protection of his good name, reputation, honor and integrity and (2) freedom to take advantage of other employment opportunities. Once again, plaintiff's counsel states that

additional discovery is required on this claim (Doc. 28 at 8). Plaintiff's counsel's explanation is as follows:

> Defendants' Motion for Summary Judgment only takes issue with whether such statements were true, and whether such statements foreclosed other employment opportunities. As stated above, discovery is incomplete. However, Plaintiff testified in his deposition that he did in fact fingerprint former Officer Browning and Plaintiff ran a III check on Officer Browning prior to signing the KLETC training form. Defendants' statements to the contrary are not supported by any testimony or controverting evidence. At this stage, all inferences are to be resolved in Plaintiff's favor, and thus, Plaintiff's testimony that he fingerprinted former Officer Browning and directed that a III check be performed must be taken as true. Further, Plaintiff testified that despite receiving initial inquiries from potential employers indicating they were "very interested," the potential employers dramatically changed their stance and denied Plaintiff employment, or in some cases, denied Plaintiff an interview, which Plaintiff believes to be due to false statements made by one or more of the Defendants.
>
> Plaintiff can demonstrate that genuine issue exists as to whether the Defendants participated in the dissemination of the Kansas Highway Patrol letter. Plaintiff testified in his deposition that during a City Council meeting, Defendant Mickey encouraged anyone to come to the City Clerk's office to obtain a copy. A genuine issue of fact exists as to the specific level of participation any of the Defendants had in distributing such letter, and such issue of fact will not be brought out until discovery, specifically the depositions of Defendants Stice, Mickey and Peckham, as well as the deposition of Plaintiff's wife, is completed.

(Doc. 28 at 9).

Plaintiff's suggestion of the need for additional discovery is made without citation to Fed. R. Civ. P. 56(f) and the Tenth Circuit's case law pertaining to a suggestion of the need for additional discovery. In <u>Committee for the First Amendment v. Campbell</u>, 962 F.2d 1517 (10th Cir. 1992), the court explained:

> We review a district court's denial of a Rule 56(f) motion for an abuse of discretion. <u>Patty Precision v.</u>

> Brown & Sharpe Mfg. Co., 742 F.2d 1260, 1264 (10th Cir. 1984). "Unless dilatory or lacking in merit, the motion should be liberally treated." James W. Moore & Jeremy C. Wicker, *Moore's Federal Practice* ¶ 56.24 (1988). A prerequisite to granting relief, however, is an affidavit furnished by the nonmovant. Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d 828, 832 (10th Cir. 1986). Although the affidavit need not contain evidentiary facts, it must explain why facts precluding summary judgment cannot be presented. 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2740 at 530 (1983). This includes identifying the probable facts not available and what steps have been taken to obtain these facts. *See* 6 *Moore's Federal Practice* ¶ 56.24. In this circuit, the nonmovant also must explain "how additional time will enable him to rebut movant's allegations of no genuine issue of fact." See Meyer v. Dans un Jardin, S.A., 816 F.2d 533, 537 (10th Cir. 1987); Patty Precision, 742 F.2d at 1264. Plaintiffs' submission in opposition to summary judgment contained in the record, I R. doc. 22 & 23, fails both independent requirements.
>
> We have considered presumably unverified statements in attorney memoranda and found them wanting as grounds for a Rule 56(f) continuance. See Dreiling v. Peugeot Motors of America, 850 F.2d 1373, 1377 (10th Cir. 1988); Weir v. Anaconda, 773 F.2d 1073, 1083 (10th Cir. 1985). Notwithstanding, we agree with the Third Circuit that counsel's unverified assertion in a memorandum opposing summary judgment does not comply with Rule 56(f) and results in a waiver. See Radich v. Goode, 886 F.2d 1391, 1393-95 (3rd Cir. 1989). "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56(f) in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition." First Chicago Int'l v. United Exch. Co. Ltd., 836 F.2d 1375, 1380 (D.C. Cir.1988). Advocacy by counsel does not suffice for evidence or fact in the Rule 56(f) context. Radich, 886 F.2d at 1395.

Id. at 1522.

Attached to plaintiff's response to defendants' motion are unverified statements of plaintiff and his wife which presumably purport to support plaintiff's claims. These statements need not be considered because they are not in affidavit form. In addition, plaintiff's counsel's bare assertions regarding the need for

-11-

additional discovery can be ignored.

This court recognizes, as it must, that the Fourteenth Amendment protects citizens from government deprivation of life, liberty and property. However, the protection is not absolute. Only deprivations undertaken without procedural due process of law are protected. To state a due process claim, a plaintiff must allege (1) that he possessed a protected liberty interest and (2) that he was not afforded the appropriate level of process during the deprivation. A citizen has a protected liberty interest in his good name and reputation. But to arise to the level of a constitutional violation, a plaintiff must demonstrate that his good name and reputation have been abridged coexistent with a loss of government employment. Defamation and injury to one's reputation, standing alone, are not enough to establish a claim for deprivation of a liberty interest. Lancaster v. Independent School Dist. No. 5, 149 F.3d 1228 (10th Cir. 1998) and Stidham v. Peace Officer Standards and Training, 265 F.3d 1144, 1153 (10th Cir. 2001).

The Tenth Circuit has integrated the two liberty interests claimed by plaintiff into a single test. To prevail, a plaintiff ultimately must prove that a defendant made (1) a defamatory statement which impugned his good name, reputation, honor or integrity; (2) the defamatory statement was false; (3) the defamatory statement occurred in the course of terminating plaintiff and foreclosed other employment opportunities; and (4) the defamatory statement was published. Whitney v. New Mexico, 113 F.3d 1170, 1175 (10th Cir. 1997). However, proof that a person's

-12-

termination has made him less attractive to potential employers does not establish a constitutionally protected liberty interest; the evidence must be sufficient to show that the person's ability to obtain other employment has been damaged. <u>Martin v. United School Dist. No. 434, Osage County</u>, 728 F.2d 453, 456 (10th Cir. 1984) and <u>Conaway v. Smith</u>, 853 F.2d 789, 794 (10th Cir. 1988). (A discharge based upon allegations of neglect of duties, even if false, does not call into question a person's good name, reputation, honor or integrity).

Defendants have admitted for purposes of their motion that the highway patrol letter qualifies as a defamatory statement. Their reason for doing so is unclear. None of the defendants wrote the letter and apparently were unaware of what plaintiff had failed to do until they received the letter. Defendants deny, however, that the highway patrol letter was false, that it occurred in the course of terminating plaintiff and foreclosed other employment opportunities. Defendants also deny that they had anything to do with the publication of the highway patrol letter.

Even if it is assumed that the highway patrol letter defamed plaintiff, it is clear that defendants have put forth undisputed facts sufficient to warrant summary judgment in their favor. Plaintiff has no evidence that any of defendants were responsible for posting the letter at the donut shop. If the letter went to potential employers, there is no evidence any of defendants were responsible for its dissemination. Defendant Mickey's alleged statement during the July 18 hearing regarding plaintiff's failure to do his job was not defamatory and was not published. Rather,

-13-

the statement appears to be mayor Mickey's explanation for her official concern about plaintiff's actions, a concern which she certainly was entitled to voice after receiving the highway patrol letter. Similarly, attorney Peckham's statement regarding the reasons for plaintiff's termination, even if false, did not damage plaintiff's ability to obtain employment. Plaintiff's multiple-hearsay deposition testimony regarding what his wife heard is not sufficient to create a disputed issue on the damage-to-employment element of the four-part test. In any event, plaintiff obtained employment with an employer which was aware of what transpired at the city of Atwood. Therefore, there are no disputed issues of material fact regarding the existence of a liberty interest. Plaintiff had none. This makes it unnecessary to consider whether plaintiff was denied due process during the termination proceedings.

## Conclusion

Defendants' motion for summary judgment (Docs. 23 and 24) is sustained as to plaintiff's federal claims. The court declines to exercise jurisdiction over plaintiff's state law claims. This case is dismissed, with prejudice.[1]

A motion for reconsideration of this order pursuant to this court's Rule 7.3 is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider

---

[1] Plaintiff's claims against the city of Atwood are based entirely upon allegations that the individual defendants acted in their official capacities. No declaratory or injunctive relief is sought. Thus, summary judgment in favor of the individual defendants disposes of all claims against the city.

is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. Comeau v. Rupp, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion and response thereto shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this   22nd   day of June 2005, at Wichita, Kansas.

s/ Monti Belot
Monti L. Belot
UNITED STATES DISTRICT JUDGE